WESTERMAN BALL EDERER MILLER
   & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, New York 11556
 (516) 622-9200
Thomas A. Draghi, Esq.

*Co-Counsel to Delshah 721 Fifth 45K, LLC*

Hearing Date:  **January 10, 2014**
Time:   **9:30 a.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

     MARVEN WAMWRIGHT,

                  Debtor.

-----------------------------------------------------------------X

Chapter 13
Case No. 13-43546 (ESS)

### OBJECTION OF DELSHAH 721 FIFTH 45K, LLC TO DEBTOR'S MOTION TO VACATE DISMISSAL OF THE DEBTOR'S BANKRUPTCY CASE PURSUANT TO FED. R. BANKR. P. 9024

TO:    THE HONORABLE ELIZABETH S. STONG,
        UNITED STATES BANKRUPTCY JUDGE:

      Delshah 721 Fifth 45K, LLC ("**Delshah**"), by its undersigned co-counsel, in opposition to the motion (the "**Motion**") of Marven Wamwright ( the "**Debtor**"), pursuant to Federal Rule of Bankruptcy Procedure 9024 to vacate this Court's Order dated October 29, 2013 Dismissing the Debtor's Chapter 13 case (the "**Dismissal Order**"), respectfully states as follows:

#### Preliminary Statement

      1.     As set forth more fully below, the Debtor's Motion should be denied in all respects. The Debtor has not, and cannot, allege any extraordinary circumstances that would warrant the relief requested.  This Court provided ample opportunity and time for the Debtor to timely file the statutorily required information, and provided not one, but *two* separate orders two show cause as to why the Debtor's case should not be dismissed, providing contact information in those orders for Court's *pro se* part to assist the Debtor if needed.  The Debtor failed to abide by those Orders and to

-1-

appear before the Court as directed numerous times, despite specific direction by the Court. Accordingly, this Court properly dismissed the Debtor's case and there are no exceptional or extraordinary circumstances that warrant vacatur of that Dismissal Order.

2.     Indeed, it has become clear that the primary reason asserted by Debtor for seeking to vacate the dismissal of his case is in an attempt to undo the transfer of a condominium unit (*i.e.*, the Property, defined below) to Delshah on October 31, 2013 as a purported violation of the automatic stay.  However, as established at a recent hearing held on January 6, 2014 on Debtor's request for an order to show cause in connection with the Injunction Motion (defined below), which was denied, there was not and could not be any stay violation.  The facts reveal, among other things, the following:

(a)     there was no automatic stay in place when the Property was transferred to Delshah in the Debtor's case because the Debtor's case had been dismissed by order of this Court on October 29, 2013, prior to the transfer of the Property to Delshah on October 31, 2013;

(b)     the documentation filed by the Debtor indicates that the Debtor does not reside in the Property, nor is the Property listed on any documents belatedly filed by the Debtor as property of the Debtor's estate;

(c)     while the Debtor has attempted to belatedly assert a 5% membership interest in the last owner of record of the Property, Imperial Capital LLC ("**Imperial**"), no such ownership interest appears in the Debtor's untimely filings; and

(d)     even if the Debtor's case had not been dismissed at the time of the transfer, a separate *in rem* Order issued by the Honorable Stuart S. Bernstein in connection with the dismissal of the Imperial bankruptcy case in 2012 as a bad faith filing was in place at the time of the transfer of the Property to Delshah -- specifically precluding any assertion by any party of an automatic stay as against the transfer of the Property, effective through November 16, 2013.

3.     Further according to the amended schedule D filed by the Debtor on October 4, 2013 [Docket No. 6] the Debtor lists non-contingent, liquidated, secured debts aggregating $3,472,000.00 – well over the statutory limit of $1,081,400.00 that can be owed by an individual Chapter 13

Debtor pursuant to section 109(e) of the Bankruptcy Code.  Thus, the Debtor is not eligible to be a Chapter 13 Debtor in any event.

4.     There is simply no meritorious basis in fact or in law to entertain an attack on Delshah's rights and remedies in connection with the Property.   Delshah believes the Debtor's conduct in seeking to vacate the Dismissal Order is frivolous and for a bad faith purpose, *i.e.,* to continue the *years* of delay and obfuscation that have occurred in permitting creditors to exercise their rights in connection with the Property.  Respectfully, this Court must put a stop to the mischief being perpetuated here, along with the continued abuse of the bankruptcy process.  For these reasons, the Debtor's motion to vacate this Court's order dismissing his bankruptcy case should be denied in all respects.

## Background[1]

5.     As set forth more fully in the Cadlerock MTD, an individual named Mel Cooper ("**Cooper**") was the former owner of a certain condominium apartment located in Trump Tower, at 721 Fifth Avenue, Unit 45k, New York, New York (the "**Property**").  By assignment of Judgment dated September 18, 2008 and recorded on September 23, 2008, Cadlerock Joint Venture, L.P. ("**Cadlerock**") became the holder of a judgment dated May 7, 2007 existing against, among others, Cooper.  Cadlerock took steps to execute on its judgment as against the Property in or around June 2, 2010.  *See* Cadlerock MTD at ¶7.

6.     According to the CadleRock MTD, Cooper asserted, in opposition to Cadlerock's execution efforts, that it had transferred the Property to Imperial.  In support of that assertion, Cooper produced a "Confirmatory Deed" from Cooper to Imperial executed on October 25, 2007, which was executed <u>after</u> the May 7, 2007 judgment and therefore subject to that judgment.

---

[1]     Delshah respectfully refers to the Motion to Dismiss filed by Cadle Rock Joint Venture LLP (the "**Cadlerock MTD**") and the Motion to Dismiss filed by JP Morgan Chase Bank, in connection with a purported adversary proceeding commenced by the Debtor, *Wamwright v. Cadle Rock Joint Venture L.P. et al.,* Adv. Pro. No. 13-01529 (ESS) (the "**Adversary Proceeding**") at Docket Nos. 4 and 6 respectively, and incorporates by reference the facts described therein, as summarized herein.

Cadlerock MTD at ¶8.  As set forth in the Cadlerock MTD, this issue was ultimately resolved in the state court Appellate Division in Cadlerock's favor. Cadlerock MTD at ¶21 and Ex. G thereto.

**The Serial Bankruptcy Filings**

7.      On July 1, 2011, during the pendency of disputes concerning ownership of the Property as between Cooper and Imperial and the priority of Cadlerock's judgment, Cooper filed a voluntary bankruptcy petition, without schedules or supporting information.  That bankruptcy case was dismissed on September 20, 2011.  *See* Cadlerock MTD at ¶16 and Ex. B thereto.

8.      On June 1, 2012, Cooper filed a second voluntary petition, without required schedules or supporting information.  Cooper's second filing was dismissed on September 7, 2012. Cadlerock MTD at ¶17 and Ex. C thereto.

9.      On September 21, 2012, Cooper filed a _third_ bankruptcy petition.  Cadlerock obtained an Order from the Bankruptcy Court in that case, confirming that no bankruptcy stay was in effect on December 14, 2012.  *See* Ex. D thereto at Docket No. 26.  Cooper's third case was ultimately dismissed, with prejudice for one year, by Order dated February 6, 2013.  *Id.*, Ex. D at Docket No. 33.

10.      On September 5, 2012, Cooper caused his company, Imperial, to file its own bankruptcy petition (Cooper signed the petition himself on behalf of Imperial).  Cadlerock MTD at ¶19 and Exhibit E thereto.

11.      By Order dated November 16, 2012 (the "**In Rem Order**"), the Honorable Stuart M. Bernstein of the United States Bankruptcy Court for the Southern District of New York not only dismissed Imperial's bankruptcy case, but specifically ordered  as follows:

ORDERED, that in the event any party claiming to hold an interest in the real property located at 721 Fifth Avenue, Unit 45K, New York, New York ("Property"), be it legal, equitable, beneficial or possessory, files a subsequent petition for relief under the Bankruptcy Code, or becomes the debtor in an involuntary case under the Bankruptcy Code, within a period of twelve months form the date of this order, [*i.e.*, through and including November 16, 2013] such filing will

not operate as an automatic stay to prevent [Cadlerock], its successor, agents or assigns from exercising their rights with respect to the Property as if no bankruptcy petition had been filed . . . ".

Cadlerock MTD, at ¶20 and Exhibit F thereto.  For ease of reference, a copy of the In Rem Order is also attached hereto as Exhibit 1.

**The Debtor's Filing**

12.     On June 10, 2013, the Debtor filed his voluntary petition for relief under Chapter 13 of the Bankruptcy Code.  Notably, this filing happened within the 12 month window of the In Rem Order, so this filing did not stay any acts with respect to the Property.

13.     The Debtor's filing was deficient, in that several schedules and a statement of financial affairs was missing from the filing.  The Debtor was served with a deficiency notice on June 12, 2013.  [Docket No.  10].

14.     The Debtor did not file the missing schedules or statement of financial affairs, or take any steps to remedy the deficiencies.

15.     On July 11, 2013, the Clerk of the Court served on the Debtor, and filed, a Final Notice of Section 521 Deficiencies, warning of dismissal of the case absent cure of the deficiencies within 45 days thereof.  [Docket No. 12, 13].

16.     The Debtor still did not file the missing documents or take any steps to remedy the deficiencies.

17.     On July 26, 2013, the Clerk of the Court filed a request for Judicial Determination Concerning Dismissal [Docket No. 14, as amended by Docket No. 15].

18.     On July 29, 2013, the Court directed the Clerk's office not to dismiss the case, but rather scheduled a hearing by Order to Show Cause directing the Debtor to appear and show cause why the case should not be dismissed (the "**First Order to Show Cause**").  [Docket No. 17].  This Order also provided instructions on contacting the *pro se* clerk of the Court for assistance if needed.  *Id.*  The First Order to Show Cause was scheduled to be heard on September 6, 2014 ("**The First**

**Show Cause Hearing**"). *Id.* The Debtor was served with the Order on August 1, 2013. [Docket No. 18].

19.    The Debtor did not comply with the First Order to Show Cause, including failing to appear at the First Show Cause Hearing.

20.    On September 9, 2013, this Court issued a Second Order to Show Cause why the Debtor's case should not be dismissed, scheduling a hearing for October 4, 2013 and directing the Debtor to appear at that hearing (the "**Second Show Cause Hearing**"). [Docket No. 19].

21.    The Debtor was served with the Second Order to Show Cause on September 13, 2013. [Docket No. 20].

22.    On October 4, 2013, the Debtor again failed to appear at the Second Show Cause Hearing as directed by the Court. Rather, the Debtor finally purported to file certain "amended" schedules and statement of financial affairs. Notably, nowhere on Schedules A or B filed by the Debtor on October 4, 2013 is there any reference to the Debtor having an interest in Imperial, or in the Property.

23.    The Court thereafter adjourned the hearing on the Order to Show Cause for the third time, to October 28, 2013 (the "**Third Show Cause Hearing**"). Outrageously, the Debtor failed – again – to appear before the Court at the Third Show Cause Hearing.

24.    On October 29, 2013, this Court entered the Dismissal Order. [Docket No. 27].

**Sale of the Property to Delshah**

25.    As described in the Cadlerock MTD, on October 31, 2013, Delshah purchased the Property from the Co-Receivers appointed by the State Court in connection with the CadleRock litigation. Delshah is now the owner and holder thereof. Cadlerock MTD at ¶22 and Exhibit H thereto.

26.    On November 18, 2013, the Debtor filed the within Motion, consisting of an

affidavit seeking to vacate the Dismissal Order.    [Docket No. 32].    Two days later, on November 22, 2013, although the Debtor's case was and is still dismissed, the Debtor filed the Adversary Proceeding alleging, *inter alia*, that the transfer of the Property to Delshah was in violation of the automatic stay provisions of 11 U.S.C. §362.  [Docket No. 32].  More recently, on January 2, 2014, counsel appeared for the Debtor and filed a Motion *via* Order to Show Cause seeking imposition of the automatic stay, [Docket No. 35], seeking to enjoin an upcoming landlord/tenant hearing in connection with Delshah's eviction proceedings with respect to the Property (the "**Injunction Motion**").    After a hearing held on January 6, 2014, the Injunction Motion was denied.

27.    It is apparent from the Adversary Proceeding and the Injunction Motion that the Debtor's true motives in seeking an Order vacating the Dismissal Order, is to assert that the transfer of the Property to Delshah violated the automatic stay provisions of 11 U.S.C. §362.  As described above and clearly established at the hearing on the Injunction Motion, however, the Debtor is wrong: there was no stay in place.  The Debtor's basis for seeking to vacate the Dismissal Order for this reason is thus fundamentally flawed and the Motion should, respectfully, be denied in all respects.[2]

**ARGUMENT**

**THE DEBTOR'S MOTION TO VACATE**
**THE DISMISSAL ORDER SHOULD BE DENIED.**

28.    As a threshold matter, it is well settled that a bankruptcy case may only be reopened pursuant to 11 U.S.C Section 350(b) if it is closed after being fully administered pursuant to section 350(a).  *In re Wassah*, 417 B.R. 175 (Bankr. E.D.N.Y. 2009)(denying motions to vacate orders

---

[2]    Counsel for Delshah has provided copies of the In Rem Order to Debtor and his counsel, and has demanded withdrawal of this Motion and the Adversary Proceeding.  Delshah reserves the right to seek sanctions pursuant to Bankruptcy Rule 9011 for, among other things, Delshah's costs, including attorneys' fees, for having to address this meritless conduct.

dismissing Chapter 13 bankruptcy cases), *quoting Critical Care Support Servs. v. United States (In re Critical Care Support Servs.)*, 236 B.R. 137, 140 (E.D.N.Y. 1999).  *See also*, *In re Olejnik*, 2010 WL 4366183 (holding that a case cannot be reopened pursuant to section 350(b) unless it was closed pursuant to section 350(a)).

29.    As stated in *Critical Care*, "[a] bankruptcy [case] is reopened under 11 U.S.C. §350(b), not to restore the pre-bankruptcy status . . . but to continue the bankruptcy proceeding. The word "reopened" used in section 350(b) obviously relates to the word "closed" used in the same section.  . . . [a] case cannot be reopened unless it has been closed.  An order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and is not an order closing."  *Critical Care*, 236 B.R. at 141, *quoting Armel Laminates, Inc., v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.),* 699F.2d 963, 965 (9th Cir. 1982).

30.    Accordingly, the issue presented is whether the Debtor can meet his burden of establishing grounds to vacate this Court's Dismissal Order, pursuant to Federal Rules of Civil Procedure Rule 60, made applicable in Bankruptcy Cases by Bankruptcy Rule 9024.[3]

31.    F.R.C.P. 60(b) provides as follows:

On a motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise or excusable neglect;

(2) Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial . . .;

(3) Fraud, misrepresentation, or misconduct by an opposing party;

(4) The judgment is void;

---

[3]    Were this Court to nevertheless determine that the Debtor's case could be reopened pursuant to 11 U.S.C. §350(b), Delshah submits that for the reasons stated herein, cause does <u>not</u> exist to reopen the case under Section 350(b).

(5) The judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) Any other reason that justifies relief.

F.R.C.P. 60(b); Fed. R. Bankr. P. 9024.

32.    The term "mistake" as used in 60(b) refers to excusable litigation mistake or a court's substantive mistake in law or fact – not a total disregard for the statutory deadlines and hearing dates established by the Bankruptcy Code or the Court, as happened here. *In re Wassah*, 417 B.R. 175, 183. Excusable neglect considers all of the relevant circumstances, including prejudice to the nonmovant, length of delay, impact on judicial proceedings, reason for delay and whether the movant acted in good faith. *Id.,* 417 B.R. at 183, *citing cases* (denying motion to vacate orders dismissing cases).

33.    The *Wassah* case is informative.   Much like this Debtor, the Debtors in *Wassah* failed to timely file their schedules within the time constraints set forth in Section 521(a) of the Bankruptcy Code, and failed to appear at hearing dates established by the Court. The Court found no justification to waive the requirement to comply with Section 521(a)(1)(B) and no grounds to vacate the orders dismissing the Debtors' bankruptcy cases. The court found the repeated failure to timely file schedules, coupled with repeated failures to appear to be "precisely the type of noncompliance Congress sought to address in enacting §521(i)." *Id.*, *citing cases.*

34.    Indeed, the limited cases that have excused the filing of information required by §521(a)(1)(B) after the statutory time period has expired have done so only been upon a showing of exceptional or extraordinary circumstances. *In re Wassah*, 417 B.R. 175, 183, *citing Grace v. Bank Leumi Trust Co.,* 443 F.3d 180, 190 n. 8 (2nd Cir. 2006); *Mendell v. Gollust,* 909 F.2d 724, 731 (2d. Cir. 1990), *aff'd*, 501 U.S. 115, 111 S. Ct. 2173, 115 L.Ed.2d 109 (1991), the Second Circuit has held that a movant must show "highly convincing" evidence supporting the motion, good cause for

failing to act sooner, and that granting the motion would not cause undue hardship on the other party. *Kotlicky v U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2$^d$ Cir. 1987).

35.     Here, it is clear that the real reason or "cause" for the Debtor to seek to vacate the Dismissal Order is to challenge the transfer of the Property to Delshah as somehow being done in violation of the automatic stay (based on an alleged 5% ownership interest of the Debtor in Imperial -- which is not evidenced in any way).  The Debtor's position is utterly meritless in this regard as the record clearly establishes that (a) the Debtor's bankruptcy case had been dismissed on October 29, 2013, two days prior to transfer to Delshah having taken place; and (b) in light of Judge Bernstein's In Rem Order in the Imperial bankruptcy case having been in effect at the time the Debtor filed his petition and during the time the transfer to Delshah occurred, thereby rendering any potential stay ineffective.  *See* Exhibit 1 hereto.  This Court already determined as such at the hearing denying the Injunction Motion.  As such, because there was no violation of the automatic stay resulting from the transfer of the Property to Delshah on October 31, 2013, no cognizable relief can be afforded to the Debtor by vacating the Dismissal Order and the Motion should, respectfully, be denied for this reason as well.

36.     While counsel for the Debtor appears to rely heavily on a memorandum opinion rendered in a case titled *In re Ebadi*, 10-73702 (ast), *See* Docket 41 at Exhibit D (the "**Ebadi Decision**"), that case is totally inapposite to the facts and circumstances presented here.

37.     Most notably, the Debtor in the *Ebadi* case was a guarantor of indebtedness that was foreclosed upon during the pendency of the Debtor's case, the Debtor was a named defendant in that foreclosure case and the Debtor's liability to the mortgagee could be determined by virtue of the sale.  The Court in *Ebadi* found there to be a violation of the automatic stay where a foreclosure sale was conducted after the Debtor had filed his bankruptcy case, even though the foreclosure judgment had been entered before that filing:

"[t]he stay violation at issue here is not based upon the Debtor having an ownership interest in the Property but, rather, on the Debtor's being a named defendant in the Foreclosure Action and in the foreclosure Judgment, which arose from the Debtor's status as a guarantor of the debt . . ."

Ebadi Decision at p. 7, ¶2 [Docket 41 at Ex. D].

38.    Here, this Debtor was never named or involved in the State Court proceedings that resulted in a judgment against Cooper and sale to Delshah, the Debtor is neither a guarantor nor a co-obligor of the mortgage that was owed by Cooper (not Imperial as asserted by Debtor at the Injunction Motion hearing) to JP Morgan or the judgment obtained by CadleRock.  Coupled with the undeniable fact that the Debtor's bankruptcy case was dismissed prior to the transfer to Delshah and the existence of the In Rem Order, there is no doubt that there was and is no stay implication resulting from the transfer of the Property to Delshah.  As such, this argument is unavailing and provides no separate justification for vacating the Dismissal Order.

39.    Finally, according to the amended schedule D filed by the Debtor on October 4, 2013 [Docket No. 6] the Debtor lists non-contingent, liquidated, secured debts aggregating $3,472,000.00.  Section 109(e) of the Bankruptcy Code states, in pertinent part, that "[o]nly an individual with regular income that owes, on the date of the filing of the petition . . . noncontingent , liquidated, secured debtors of less than $1,081,400.00 . . . may be a debtor under chapter 13 of this title."  11 U.S.C. §109(e).

40.    Based on the Debtor's amended schedules, he is not eligible to be a Chapter 13 Debtor in any event.  The Motion to vacate the Dismissal Order should be denied for this reason as well.

## CONCLUSION

41.    The Debtor has given no justifiable reason why he could not have timely filed the required information within the statutory deadlines and no extraordinary circumstances exist to warrant relief under F.R.C.P. Rule 60(b), particularly given that there was no stay in place when the

Property was transferred to Delshah the Debtor's Motion and related proceedings underscore the frivolousness of this exercise, and that cause does not exist to grant the relief requested in the Motion. For the foregoing reasons, the Debtor's Motion to Vacate the Dismissal Order should, respectfully, be denied in all respects.

Dated: Uniondale, New York
      January 8, 2014

WESTERMAN BALL EDERER MILLER
& SHARFSTEIN, LLP


By: _/s/ Thomas A. Draghi_____
     Thomas A. Draghi, Esq.

1201 RXR Plaza
Uniondale, New York  11556
(516) 622-9200

- and –

BACKENROTH FRANKEL & KRINSKY
800 Third Avenue, 11th Floor
New York, New York  10022
Mark Frankel, Esq.
(212) 593-1100

*Co-counsel to Delshah 721 Fifth 45K, LLC*

00935012.DOC